IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| JESSE ABRIGO, *et al.*, | Civ. No. 6:23-cv-1804-AA |
| Plaintiffs, | **OPINION & ORDER** |
| vs. | |
| KAISER FOUNDATION HOSPITALS;<br>GREG ADAMS; and<br>ANDREW BINDMAN, MD, | |
| Defendants. | |

_____

AIKEN, District Judge:

Plaintiffs Jesse Abrigo, Charlotte Bailey, Sarah Lynn Becker, Brian Cady, Jeff Coffey, Rogina Cooper, Angela Debozy, Seth Goddard, Paula Hennessey, Marilee Joy, Elizabeth Kline, Brandi Nelson, Janet Roberts, Linda Robinson, Trista Slowik, Jessica VanOrtwick, and Jessica West-Betz bring nine federal and three state law claims against their former employer, Kaiser Foundation Hospitals, Greg Adams, and Andrew Bindman, M.D. (collectively "Kaiser" or "Defendants") under 42 U.S.C. § 1983; the Food, Drug, and Cosmetic Act ("FDCA"); and Oregon law. *See* Compl., ECF No. 1. Defendants moves to dismiss all claims under Rule 12(b)(6). For the reasons stated below, Defendants' Motion to Dismiss, ECF No. 11, is GRANTED. All claims are DISMISSED.

Page 1 – OPINION AND ORDER

BACKGROUND

All background is drawn from the Complaint's allegations, along with judicially noticed facts. "Courts may take judicial notice of . . . the 'records and reports of administrative bodies.'" *United States v. Ritchie*, 342 F.3d 903, 909 (9th Cir. 2003) (quoting *Interstate Nat. Gas Co. v. S. Cal. Gas Co.*, 209 F.2d 380, 385 (9th Cir. 1953)).

In early 2020, the global COVID-19 pandemic hit the United States. On January 31, 2020, the U.S. Secretary of Health and Human Services declared the COVID-19 pandemic a public health emergency. On August 23, 2021, the FDA approved the first COVID-19 vaccine, the Pfizer-BioNTech COVID-19 vaccine. On August 25, 2021, the Oregon Health Authority ("OHA") issued an amended rule that required all Oregon healthcare providers and staff to be fully vaccinated against COVID-19 by October 18, 2021, subject to medical or religious exemption as provided under existing federal law. *Former* OAR 333-019-1010 (Aug. 25, 2021) (the "OHA Vaccine Mandate").

In August 2021, Defendant Kaiser, a private healthcare provider, announced "that a new condition of employment required employees" to be vaccinated, subject to medical or religious exemption. Compl. ¶¶ 14, 381. Plaintiffs allege that the Pfizer-BioNTech COVID-19 vaccine made available in August 2021 was an unlicensed "investigational drug," or "federal COVID-19 property," governed by the Emergency Use Authorization Act. *Id.* at ¶¶ 98, 130–133, 162, 201, 210. Plaintiff employees "exercised their federally secured right to refuse" the vaccine despite Defendants' "maximum emotional pressure" to be vaccinated. *Id.* at ¶¶ 14, 17. "Plaintiffs

remained steadfast in their right to refuse, so Defendants segregated, penalized, humiliated, terminated, and denied [them] unemployment benefits." *Id.* at ¶ 18. Plaintiffs also allege that Defendants' exemption and accommodation policy subjected employees with medical or religious vaccine exemptions to "punitive actions[,]" such as "wearing an investigational mask" or "taking an investigational test[.]" *Id.* at ¶ 252.

LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the claims. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). When evaluating the sufficiency of a complaint's allegations, a court must accept a plaintiff's allegations of fact as true and construe them in the light most favorable to the plaintiff. *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012). But a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007). "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation" of the action's elements. *Id.* at 555 (internal quotation marks and citation omitted). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (quoting *Twombly*, 550 U.S. at 557).

To survive a motion to dismiss, a pleading must allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft*, 556 U.S. at 663 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.

DISCUSSION

Plaintiffs are former employees[1] who seek redress against their former employer, Defendants Kaiser Foundation Hospitals, its Chief Executive Officer, Adams, and Chief Medical Officer, Bindman (collectively "Kaiser" or "Defendants"), for alleged wrongful termination and other harms suffered because Plaintiffs declined to be vaccinated or comply with the exemption requirements of Kaiser's COVID-19 employee vaccination policy. Compl. ¶¶ 18, 252. Plaintiffs bring nine federal claims: Counts I–VIII, under 42 U.S.C. § 1983, and Count XII under the FDCA's Emergency Use Authorization (EUA) provision; and three state claims: Counts IX–XI.

I.    *Federal Claims*

    A.    *§ 1983 Claims - Counts I–VIII*

Plaintiffs assert eight claims under 42 U.S.C. § 1983 "to seek redress . . . for the deprivation of [their] [c]onstitutional and federally secured right to refuse an EUA investigational drug without incurring a penalty[.]" Compl. ¶ 5. Plaintiffs' § 1983 claims allege violations of 21 U.S.C. § 360bbb03 (the FDCA's EUA provision); the Fourteenth Amendment (Equal Protection, Procedural and Substantive Due Process

---

[1] Defendants assert that some of the named plaintiffs were not employed by Kaiser Foundation Hospitals but by other Kaiser entities. Defendants also assert that they were not able to locate any employment records for one of the named plaintiffs. Def. Mot. at 2 n.1. However, the Court accepts, for the purposes of this motion, that Plaintiffs were employed by Defendants as alleged.

clauses); the Spending Clause; the Excessive Fine Clause; the Unconstitutional Conditions Doctrine; and the PREP Act. *Id.* at 3–4.

Section 1983 does not create substantive rights but instead "provides a mechanism for enforcing individual rights 'secured' elsewhere, *i.e.*, rights independently 'secured by the Constitution and laws' of the United States." *Gonzaga Univ. v. Doe*, 536 U.S. 273, 285 (2002). To state a claim under 42 U.S.C. § 1983, a plaintiff must allege that (1) they were "depriv[ed] of a right secured by the federal Constitution or statutory law," and (2) that "the deprivation was committed by a person acting under color of state law." *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006) (citing *West v. Atkins*, 487 U.S. 42, 48 (1988). The Court addresses the state action requirement first.

### 1. *State Action*

To prevail on their § 1983 claims, Plaintiffs must establish that Defendants were state actors when Defendants terminated Plaintiffs' employment.

"The state-action element in § 1983 'excludes from its reach merely private conduct, no matter how discriminatory or wrongful.'" *Caviness v. Horizon Cmty. Learning Ctr., Inc.*, 590 F.3d 806, 812 (9th Cir. 2010) (quoting *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999)). Courts "start with the presumption that private conduct does not constitute governmental action." *Sutton v. Providence St. Joseph Med. Ctr.*, 192 F.3d 826, 835 (9th Cir. 1999). Courts may treat the action of a private entity as an act of the state government "only if there is such a 'close nexus between the State and the challenged action' that seemingly private behavior 'may

be fairly treated as that of the State itself.'" *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 288 (2001) (quoting *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974)).

To determine whether a private party is a state actor under § 1983, the Ninth Circuit recognizes four tests: "(1) public function; (2) joint action; (3) governmental compulsion or coercion; and (4) governmental nexus." *Rawson v. Recovery Innovations, Inc.*, 975 F.3d 742, 747 (9th Cir. 2020). "Satisfaction of any one test is sufficient to find state action, so long as no countervailing factor exists." *Id.* (quoting *Kirtley v. Rainey*, 326 F.3d 1088, 1092 (9th Cir. 2003)). However, "compliance with generally applicable laws" cannot "convert private conduct into state action" under any of these tests. *Heineke v. Santa Clara Univ.*, 965 F.3d 1009, 1013 (9th Cir. 2020) (citing cases).

Plaintiffs advance three Ninth Circuit state action tests, which they assert apply to Defendants' conduct: public function, joint action, and governmental compulsion.

a.    *Public Function Test*

Plaintiffs assert that Defendants performed public functions because they "excercis[ed] powers exclusively held by the federal government and Oregon, . . . and operate[d] exclusively under the State's authority," Compl. ¶ 315, by "introducing federally funded investigational drugs into commerce," Pl. Resp. at 24, ECF No. 14, and "storing and administering federally owned [COVID-19 vaccine] on behalf of the State," Pl. Resp. at 29.

"The public function test is satisfied only on a showing that the function at issue is 'both traditionally and exclusively governmental.'" *Kirtley*, 326 F.3d at 1093 (quoting *Lee v. Katz*, 276 F.3d 550, 555 (9th Cir. 2002)).

Defendants argue that "enforcement of the Vaccination Policy . . . was not a public function . . . because neither the employment of persons nor the establishment and enforcement of the conditions of their employment, such as compliance with . . . a COVID-19 vaccination policy—are 'both traditionally and exclusively governmental.'" Def. Mot. at 19.

Courts begin a state action analysis by "identifying the specific conduct of which the plaintiff complains." *Am. Mfrs.*, 526 U.S. at 51 (1999) (internal quotation marks and citation omitted). Here, the complained of conduct (the source of Plaintiffs' injuries) is Defendants' enforcement of Kaiser's employee vaccination policy, not Defendants' distribution and administration of patient vaccine. Specifically, Plaintiffs allege that they were terminated for failing to comply with Kaiser's vaccination policy. Compl. ¶¶ 17, 18. The question, then, is whether the enforcement of a private employer's employment policy is a traditional and exclusive prerogative of the State.

"[T]he lean list of the 'very few' recognized public functions includes 'running elections,' 'operating a company town,' and not much else." *Prager Univ. v. Google LLC*, 951 F.3d 991, 998 (9th Cir. 2020) (quoting *Manhattan Comty. Access Corp. v. Halleck*, 587 US 802, 809 (2019). Here, enforcing a private employer's employment policy is neither a traditional nor *exclusive* state function. It is typically a private

employer's function.  And plaintiffs offer no facts or caselaw to the contrary.  *Johnson v. Tyson Foods, Inc.*, 607 F. Supp. 3d 790, 800 (W.D. Tenn. 2022) (private business implementing an employee vaccination policy not akin to any of "those limited activities—for example running a city—that have 'traditionally and exclusively' been performed by the government"); *Horsley v. Kaiser Found.*, No. 23-cv-04628-AMO, 2024 WL 3956313, at *7 (N.D. Cal. Aug. 26, 2024) (private employer's enforcement of vaccination policy not a public function); *Boysen v. PeaceHealth*, No. 6:23-cv-012299-AA, 2024 WL 3888682, at *11 (D. Or. Aug. 19, 2024) (concluding the same).

Plaintiffs cannot establish that enforcing a private employer's employment policy is the traditional and exclusive prerogative of the State.  Plaintiffs do not meet the "public function" test.

### b.    *Joint Action (Symbiotic Relationship) Test*

Plaintiffs allege that Defendants engaged in joint action with the State because, on behalf of the state and federal government, Defendants were required to obtain "legally effective informed consent" to administer the product and "conduct[] ongoing research activities" for the state and federal government's "COVID-19 Vaccination Program[.]"  Compl. ¶¶ 318–20, Pl. Resp. at 26.

Joint action exists "where the State has so far insinuated into a position of interdependence with the [private party] that it was a joint participant in the enterprise."  *Rawson*, 975 F.3d at 748 (internal quotation marks omitted).

Defendants argue that they did not engage in joint action when they enforced Kaiser policy and that "Plaintiffs again conflate an employer's policy requiring vaccination with that employer administering vaccines." Def. Mot. at 20.

Here, because the action at issue is Kaiser's enforcement of its vaccination policy, not its administration of patient vaccine, the question is whether the State was a joint participant in implementing Kaiser's employment policy. The test is "intentionally demanding and requires a high degree of cooperation between private parties and state officials to rise to the level of state action." *O'Handley v. Weber*, 62 F.4th 1145, 1159–60 (9th Cir. 2023), *cert. denied*, 2024 WL 3259696, ___U.S. ___ (July 2, 2024).

Here, Defendants enforced Kaiser's employment policy to comply with the OHA vaccine mandate. Defendants' action to comply with state law does not indicate a "high degree of cooperation" between Defendants and the State; it indicates that Defendants abided the law. *Horsley*, 2024 WL 3956313, at *7 (following the law "is insufficient to meet the 'demanding standard' of joint action") (quoting *O'Handley*, 62 F.4th at 1160); *Boyd v. Shriners Hosp. for Child.*, No. 1:23-342, 2024 WL 5263009, at *2 (W.D. Pa. Dec. 31, 2024) ("[F]inancial assistance and state regulation are insufficient to render the actions of a private institution 'state actions,' even if such regulation is pervasive, extensive, and detailed."); *Timken v. So. Denver Cardiology Assocs.*, P.C., No. 23-cv-02859-GPG-SBP, 2024 WL 4407003, at *3 (D. Colo. Aug. 29, 2024) ("[N]ot all coordinated action will satisfy the test. . . . A shared goal is not enough; 'state and private entities must share a specific goal to violate the plaintiff's

constitutional rights by engaging in a particular course of action.'") (quoting *Gallagher v. Neil Young Freedom Concert*, 49 F.3d 1442, 1455 (10th Cir. 1995)).

Plaintiffs fail to allege facts to show that, when Defendants enforced Kaiser's vaccination policy, they did so with a high degree of state cooperation or acted other than to abide the law. Plaintiffs do not meet the "joint action" test.

> c.    *Governmental Compulsion (Close Nexus) Test*

Plaintiffs allege that Defendants meet the governmental compulsion test because "OHA required its State Actors to adopt policies that imposed penalties upon licensed healthcare workers for refusing the injection of federal drugs under threat of penalty." Pl. Resp. at 24.

"Governmental compulsion or coercion may exist where the State 'has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State.'" *Rawson*, 975 F.3d at 748 (quoting *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982)). But governmental compulsion in the form of a generally applicable law, without more, is not sufficient to deem a private entity a governmental actor. *Sutton*, 192 F.3d at 841.

Plaintiffs allege that the State "order[ed]" Defendants to "apply[] . . . penalties to the right to refuse [the COVID-19 product]." Pl. Resp. at 25. And Defendants were "under no legal obligation to terminate Plaintiffs for refusing the federal [COVID-19 product]" but did so anyway because of unspecified State influence. *Id.* But Plaintiffs also allege that the State "acted with reckless indifference to Plaintiffs['] rights when allowing Kaiser . . . to penalize refusers of the drugs[.]" *Id.* at 27.

Plaintiffs concede that Defendants enforced the COVID-19 policy to comply with the law because the State "ordered" it to do so. But, without more, complying with the law does not amount to coercion or compulsion. Plaintiffs suggest that the State somehow influenced Kaiser to terminate employees but do not allege facts to support that allegation. Finally, Plaintiffs allege that the State was "recklessly indifferent" and "allow[ed]" Kaiser to penalize unvaccinated employees—a hands off stance that is the opposite of coercion. Plaintiffs do not satisfy the "governmental compulsion" test.

Importantly, even if Plaintiffs satisfied the compulsion test, Plaintiffs could not sue Kaiser, a private party. Where there is compelled state action under § 1983, the State is liable, not the private party. *Sutton*, 192 F.3d at 838 (To make private employers liable for compelled § 1983 violations "would . . . convert every employer . . . into a governmental actor every time it complies with a presumptively valid, generally applicable law, such as an environmental standard or tax-withholding scheme.")

In sum, this Court and others have already determined in substantially identical cases that a private healthcare employer is not a state actor when it enforces its private employment policy. *See, e.g., Boysen*, 2024 WL 3888682, at *12 (plaintiff did "not plausibly alleged that [private healthcare provider] was a state actor when it terminated [p]laintiff"); *Horsley*, 2024 WL 3956313, at *7 (private health care provider was not a state actor "by following generally applicable law and issuing a vaccination policy"); *Pearson v. Shriners Hosp.*, 736 F. Supp. 3d 521, 527

(S.D. Tex. 2024) (plaintiffs failed to allege any "manner in which the termination of their employment may have constituted state action"); *Boyd*, 2024 WL 5263009, at \*1 ("[P]rivate nonprofit hospital, along with its officers and employees, do not qualify as state actors when they make corporate decisions, including by setting internal policies intended to protect their staff and patients and their families.") (collecting cases).

Here, also, Plaintiffs fail to allege state action. The Court need not address the second § 1983 prong. Without state action, Plaintiffs fail at the threshold. Accordingly, Plaintiffs' § 1983 claims I–VIII are dismissed.

B.    *FDCA Emergency Use Authorization Act - Count XII*

Plaintiffs bring an independent federal claim under 21 U.S.C. § 360bbb-3, the Emergency Use Authorization ("EUA") Act, for alleged harms they suffered "[w]hen Defendants penalized Plaintiffs for refusing to inject a[n] . . . investigational drug into their bodies[.]" Compl. ¶ 65. Plaintiffs argue that, even absent state action, they can bring suit under the EUA because it contains an implied right of action. Compl. ¶¶ 508–510.

The EUA statute is a provision of the Food, Drug, and Cosmetic Act ("FDCA") that authorizes the U.S. Health and Human Services Secretary to authorize the emergency use of certain medical products and to set conditions on that use. *See generally* 21 U.S.C. § 360bbb-3. The FDCA expressly states that all enforcement actions "shall be by and in the name of the United States." 21 U.S.C. § 337(a). The

statute does not confer a private right of action, but Plaintiffs argue that one can be implied. Compl. ¶¶ 508–510.

To create a private right of action, a statute must expressly grant private rights to an identifiable class and be "phrased in terms of the persons benefited." *Gonzaga*, 536 U.S. at 274. But even when a statute is phrased in such explicit rights-creating terms, it must also "manifest[] an intent to create . . . a private *remedy*." *Id.* (emphasis in original) (internal quotation marks omitted). Thus, Congress must "display[] through the statute an 'intent to create not just a private right but also a private remedy.'" *McGreevey v. PHH Mortgage Corp.*, 897 F.3d 1037, 1043–44 (9th Cir. 2018) (quoting *Alexander v. Sandoval*, 532 U.S. 275, 286 (U.S. 2001) (brackets omitted).

The FDCA, which contains the EUA, does not expressly grant private rights to any identifiable class, nor does it provide a private remedy. For this reason, the Supreme Court has determined that one cannot imply a private right of action in the FDCA. *See POM Wonderful LLC v. Coca-Cola Co.*, 573 U.S. 102, 109 (2014) ("Private parties may not bring enforcement suits" [under the FDCA].); *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 349 n.4 (2001) ("The FDCA leaves no doubt that it is the Federal Government rather than private litigants who are authorized to file suit for noncompliance[.]"); *see also Boyd*, 2024 WL 5263009, at *3 (W.D. Pa. Dec. 31, 2024) (explaining that courts in substantially identical cases have uniformly rejected an implied right of action in the EUA statute) (collecting cases).

Because a private right of action does not exist and cannot be implied from the FDCA and the EUA, Plaintiffs, as private individuals, cannot state a claim under the EUA statute, 21 U.S.C. § 360bbb-3.

II. *State Claims - Counts IX–XI*

Plaintiffs allege three state law claims (Counts IX–XI). Under 28 U.S.C. § 1367, a district court "may decline to exercise supplemental jurisdiction" where "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Typically, "[w]hen federal claims are dismissed before trial . . . pendant state claims also should be dismissed." *Religious Tech. Ctr. v. Wollersheim*, 971 F.2d 364, 367–68 (9th Cir. 1992) (citation omitted); *see also City of Colton v. Am. Promotional Events, Inc.-W.*, 614 F.3d 998, 1008 (9th Cir. 2010) (district court acted within its discretion to decline supplemental jurisdiction over state law claims after dismissing all federal claims).

Here, the Court has dismissed Plaintiffs' federal claims and declines to exercise supplemental jurisdiction over the remaining state claims. *See Horsley*, 2024 WL 3956313, at *8 (declining to exercise supplemental jurisdiction over state claims after dismissing federal claims in a substantially identical case). Accordingly, the Court dismisses Plaintiffs' state claims without prejudice.

III. *Leave to Amend*

Plaintiffs did not request leave to amend. Defendants argue that amendment is futile because "Plaintiffs have failed to plausibly allege 'state action' by Defendants" and "no pleadings amendment can cure this failure." Def. Reply at 7,

Page 14 – OPINION AND ORDER

ECF No. 20. Defendants also argue that Plaintiffs' EUA claim under 21 U.S.C. § 360bbb-3 should be dismissed with prejudice as a matter of law because "that claim is expressly foreclosed by the Food, Drug, and Cosmetic Act[.]" *Id.* at 20.

Generally, Federal Rule of Civil Procedure 15 "advises the court that leave shall be freely given when justice so requires[] . . . and that "[t]his policy is to be applied with extreme liberality." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (internal quotation marks and citation omitted).

"Dismissal without leave to amend is proper only if it is clear . . . that the complaint could not be saved by any amendment." *McKesson HBOC, Inc. v. New York State Common Ret. Fund, Inc.*, 339 F.3d 1087, 1090 (9th Cir. 2003) (internal quotation marks and citations omitted). "[A] proposed amendment is futile only if no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense." *Sweaney v. Ada Cnty., Idaho*, 119 F.3d 1385, 1393 (9th Cir. 1997) (alteration in original) (citation omitted). "Futility of amendment can, by itself, justify the denial of a motion for leave to amend." *United States ex rel. Lee v. SmithKline Beecham, Inc.*, 245 F.3d 1048, 1052 (9th Cir. 2001).

Here, because amendment would be futile, the Court declines to grant leave to amend. All of Plaintiffs' § 1983 claims (Counts I–VIII) are dismissed with prejudice because Plaintiffs fail to show state action, and Plaintiffs cannot allege additional facts that would transform Defendants into state actors. Plaintiffs' claim under the FDCA (Count XII) is dismissed with prejudice because that statute contains no express or implied private right of action—a deficiency that Plaintiffs cannot cure.

Finally, all three of Plaintiffs' state law claims (Counts IX–XI) are dismissed without prejudice because the Court declines to exercise supplemental jurisdiction over the state law claims.

## CONCLUSION

For the reasons explained, Defendants' Motion to Dismiss, ECF No. 11, is GRANTED. Claims I–VIII and XII are DISMISSED with prejudice. Claims IX–XI are DISMISSED without prejudice. Final judgment shall be entered accordingly.

It is so ORDERED.

DATED this  28th  day of February 2025.


/s/Ann Aiken
ANN AIKEN
United States District Judge